Jackson, J.,
delivered the opinion of the Court.
By our statute of executions, (1) the creditor, if he thinks propel, may levy his execution on the real estate of his debtor, which shall be set off to him by metes and bounds ; and, if it is held in joint-tenancy, in coparcenary, or tenancy in common, the execution may be extended on the “ real estate held as aforesaid, or part thereof, describing the same with as much precision as the nature and situation thereof will admit.”
It is contended by the counsel for the petitioner, that the officer and the appraisers, in pursuance, of this statute, may set off all the debtor’s interest and estate in a part of the land held in common ; and that, although a levy on a part of his interest in the whole land would be good, yet they are not confined to this mode.
* On the other side, it is contended that the statute [*350] speaks of levying, in such a case, on part of the estate, and not on part of the land; and that any construction, contrary to the plain import of the words, would be highly injurious to the other co-tenants. To this it may be added, that, in the following section of the same statute, it is said, that, “ when the real estate extended *306 upon cannot be divided and set out by metes and bounds as before described, or by the description before mentioned, then execution shall be extended upon the rents of such real estate ” ; making a plain distinction between the two modes of levying before mentioned, and showing that the description contemplated in case of a joint-tenancy, &c., was not a description of the lands by metes and bounds.
This view of the language used by the legislature would lead us to adopt the construction of the respondent’s counsel; and we are confirmed in this opinion by a more general view of the object of the statute, and of the consequences that would result from a different construction.
The levy of an execution upon real estate is a kind of statute conveyance from the debtor to the creditor. “It shall make as good a title to the creditor, his heirs, and assigns, as the debtor had therein.” [Section 2.] It was not the intention of the legislature to allow estates to be created or transferred in any new manner, altogether repugnant to the principles of the common law : but to put a conveyance under this statute on as good a footing as if made freely by the debtor. And it is generally true, that no estate or interest in land can be transferred by such a levy, which the debtor might not have conveyed, by any suitable instrument, for a valuable consideration.
We are, then, to consider whether Levi Harlow, the debtor, could have conveyed by deed to the petitioner, by metes and bounds, twenty acres, parcel of the sixty acres which he held in common with the respondent, so as to entitle the petitioner to maintain a writ or petition for partition of the twenty acres against the respondent.
[*351] * There is very little concerning this question to be found in the books. Among the numerous examples in Co. Lit. and other books, of the severance of a joint-tenancy, we find many instances of a conveyance by one joint-tenant of a part of his estate, but not one unequivocal case of a conveyance of his estate in a part of the land. There is, indeed, one in Co. Lit. 193, which may possibly be so understood. He says, “ If two joint-tenants be of twenty acres, and one maketh a feoffment of his part in eighteen acres, the other cannot release ” (namely to his companion) “ his entire part, but only in two acres ; for that the jointure is severed for the residue.” Lord Coke cites no case for this opinion ; so that we have no opportunity to ascertain, by a recurrence to the facts, whether he contemplated a conveyance of the co-tenant’s part in eighteen specific acres by metes and bounds, or in eighteen twentieths of the land. If the latter be understood, it will perfectly well comport with the context ; and will illustrate the general doctrine for which the case is introduced, as well as if it be intended of a *307 specific portion of land. And it is observable that Lord Coke uses like words in another place, where it is plain that he intends an undivided portion of the estate, and not a specific parcel of the land.(2) He says, if two joint-tenants, or tenants in common, are disseized, and one releases all his right in the moiety, he shall be barred of his right in the whole ; “ but if he releases all his right which he has in the one acre, this shall bar him of his moiety of that acre only ; and yet the moiety of two acres is one acre.” Here it is obvious, that, if in the latter case we understand one acre described by metes and bounds, there is no analogy between the two cases ; and the expression at the close, that “the moiety of two acres is one acre,” is wholly misplaced and without meaning. Nor could it ever have been supposed that a release of his right in one specific part would bar him of his right in the other part.
There is one other case on this point, which is transcribed by Viner(3) from Brownlow’s Reports, 157. A manor was * conveyed, one moiety to one man in fee, and the other [ * 352 j moiety to twelve others in fee. The twelve made a feoffment to J. S. of twelve several tenements and land; and J. S. made twelve several feoffments to those twelve. The thirteenth man, who had the other moiety, brought one writ of partition against them all, pretending that they held insimul et pro indiviso ; and, by the opinion of the whole Court, it would not lie ; but he ought to have brought several writs. Brownlow, in the place cited, is stating several different points relative to the writ of partition, apparently taken from different cases which he bad heard or read. He mentions no name nor date of the case in question, nor any other particulars, from which we might learn whether there was any thing peculiar in the circumstances, or whether the point now in question was considered by the Court. A single case, thus loosely reported, is entitled to very little consideration, when it appears to be in any degree inconsistent with the general principles of the law applicable to the subject.
On the other hand, it has been decided by this Court, in the case of Porter vs. Hill,(4) that one joint-tenant cannot convey any specific part of the land to a stranger ; at least not so as to prejudice his co-tenant. It is, indeed, intimated in that case, that such a conveyance may operate by way of estoppel against the grantor. But this would not aid the petitioner in the present state of the case now under consideration.
In 2 Co. 68,. and Cro. Eliz. 803, it is laid down as a general principle, that one joint-tenant cannot prejudice his companion in *308 estate, or as to any matter of inheritance or freehold ; although as to the profits of the freehold, as the receipt of rent, &c., the acts of one may prejudice the other. But it would, in many cases, tend to the prejudice, and even to the destruction, of the interest of one co-tenant, if the other might convey to a stranger his moiety in several distinct parcels of the land. The owner of a moiety of a farm thus circumstanced, instead of one piece of land conveniently [*353 ] * situated for cultivation, would, on a partition, be compelled to take, perhaps, ten or twenty different parcels interspersed over the whole tract, and separated by parts alloted to the several grantees. Suppose that two men hold jointly, or in common, land in a town sufficient only for two house-lots, and that one of them could convey to ten persons his share in as many different portions of the land ; or that so many executions could be thus levied on his share ; the other original co-tenant would, on a partition, be compelled to take ten different lots or parcels not adjoining to each other, and each too small for any useful purpose, instead of one house-lot, to which he was originally entitled, as against the grantor.(5)
If it be said that this is a necessary incident to his estate, which he must be supposed to have contemplated when he took it ; it may be more justly said in answer, that the restraint contended for, by which one is prevented from conveying distinct portions of the land, is a necessary incident to the estate ; and that, as each was originally entitled to one moiety, for quantity and quality, to be assigned to him by commissioners or by a jury in due course of law, neither of them shall, by his own act, control the commissioners or jurors, and prevent their assigning to his companion such portion, and in such manner, as they, in the exercise of a sound discretion, would have thought just and proper. As the co-tenant had not originally any such right or authority in himself to control the proceedings on a partition, so neither can he transfer such a right to any assignees or grantees of his share.
It may be added, that, if one co-tenant has this right, the others, of course, have the same. Suppose, then, that three or more persons hold in common a township of wild land, and that each of them, without regard to the others, should divide the whole into such lots as he thought proper, and sell his share in each lot to different purchasers. As the lines of the lots, thus arbitrarily designated by the different owners, would, perhaps, in no instance coincide, [*354] it is easy to see * that a partition among the several grantees would become extremely difficult and inconvenient; and, if we imagine a like case, with a greater number of original *309 owners, and, consequently, a greater diversity in the boundaries of the lots so conveyed, a partition would become, perhaps, utterly im possible.
Whilst the right of one co-tenant to alienate any distinct portion of the land might, as we have seen, be extremely injurious to his companion, the restraint on such alienations can seldom, if ever, prejudice the grantor. Suppose one of two co-tenants of forty acres wishes to sell ten acres, he may convey one undivided fourth part of the whole, and his grantee may, by legal process, have his share set off to him. This process of partition would be equally necessary, if the conveyance had been of a moiety of twenty acres taken out of the forty. There is, therefore, no additional trouble or expense ; and the only difference is, that the grantor is prevented from selecting any particular portion of the whole tract, out of which his grantee shall-take his share ; which is a right he could never claim or exercise in his own behalf, while he continued the owner of the whole moiety.
We are, therefore, satisfied that the petitioner cannot have partition, as prayed for in this case.
It does not, however, follow, that the levy of his execution is wholly void and fruitless.† If the respondent should ever have his moiety duly set off to him in severalty, and if the part so assigned to him should not include that which was taken on the execution of the petitioner, we see no reason why the latter may not then hold what has thus been taken on his execution, as there will be no person interested or authorized to question his title, excepting Levi Harlow, who would probably be estopped by the levy of the execution, as he would be by any other conveyance made by himself. Neither does it follow that the petitioner is not now entitled to a just proportion of the rents and profits of the land, if they can be taken in such a manner as not to infringe the right of the respondent to bis share, nor to disturb him in the enjoyment of an undivided moiety of the * whole land. But, as these points are not before us, [ * 355 ] it is unnecessary further to consider them.
The verdict returned in this case is to be set aside, and a verdict entered for the respondent, upon which judgment is to be rendered.‡

 Stat. 1783, c.58.

 Fifth Reading on Fines in Hawkins's Collection of Coke's Law Tracts, 241. — See also Fitz. N. B. 9 K.

 Vin. Abr., Tit. Partition, S, Pl. 15.

 9 Mass. Rep. 34.

 See Tooker’s case, 10 Co. 68.

 Varnum vs. Abbot et al., post, 474. — Baldwin vs. Whiting, 13 Mass. Rep. 57. — Cutting et ux. vs. Rockwood, 2 Pick. 443. — Pond vs. Pond, 14 Mass. Rep. 403.

 Vide Varnum vs. Abbot, post, 474. — Baldwin vs. Whiting, 13 Mass. Rep. 57. - Pond vs. Pond, 14 Mass. Rep. 403. —Atkins vs. Bean et al., 14 Mass. Rep. 404. — Cutting et ux. vs Rockwood, 2 Pick. 443.