HORACE GATES *v.* FRANCIS SALMON, GEORGE STEELE, R. B. TURNER, ANITA BOJORQUES, AND ONE HUNDRED AND SIXTY-SIX OTHERS.

CONSTRUCTION OF STATUTES.—A statute must be so construed as to give effect, if possible, to every portion of it, and without rejecting any part as surplusage, or treating it as a repetition of a provision already made.

EFFECT OF SALE OF A SPECIFIC PART OF LANDS HELD BY TENANTS IN COMMON BY LESS THAN ALL THE OWNERS.—A conveyance by one tenant in common, or any number of them less than the whole, of a specific portion of the common lands is not void, but cannot be made to the prejudice of the tenants not uniting in the conveyance.

IDEM—TITLE ACQUIRED BY THE PURCHASER.—The grantee at such sale acquires all the interest of his grantor in such special tract, which interest is a tenancy in the special tract with the co-tenants of his grantor.

IDEM—EFFECT OF SUCH SALE ON PARTITION.—Such conveyance does not sever the special tract from the general tract of which it is a part so far as the co-tenants of the grantor are concerned, and the whole tract is subject to partition, so far as the co-tenants of the grantor are concerned, as it would be had the conveyance of the special tract not been made.

IDEM—PROPER PARTIES IN ACTION FOR PARTITION.—Section four of the Practice Act, which requires that actions should be brought in the name of the real party in interest, applies to actions for partition; and a proper construction of the provisions of section two hundred and sixty-four, taken in connection with sections two hundred and sixty-eight, two hundred and seventy-eight, and two hundred and ninety-three of the Act, requires that the holder of such special tract, as well as the co-tenants of his grantor, should be made a party to such action.

GENERAL SCOPE AND PURPOSE OF ACTIONS FOR PARTITION UNDER THE STATUTE.— The whole scope and tenor of the provisions of the Act relating to partition of

lands show that the intention was to make the one judgment of partition final and conclusive on all persons interested in the property or any part of it of whom the Court could acquire jurisdiction. Such actions, both in respect to the modes of procedure prescribed and the remedies provided, partake more fully of the rules and principles of equity than those of law.

PRACTICE — EVIDENCE. — On a new trial of an action for the partition of lands ordered by this Court on appeal, the parties are entitled to use the documentary evidence, maps, exhibits, etc., used at the former trial and remaining on file in the Court below, including the report of the testimony as taken by the referees before whom such trial was had, subject, however, to objection as when first offered.

APPEAL from the District Court, Seventh Judicial District, Sonoma County.

Defendants George Steele, R. B. Turner, Anita Bojorques, and nineteen others, appeal.

The other facts are sufficiently stated in the opinion of the Court.

*F. D. Colton*, for Appellants.

It is manifest that a partition without first deciding upon the titles to the special location would injuriously affect persons claiming under deeds of such special locations, and that no saving of their rights could be had.

We submit, therefore, that the persons claiming under these deeds of special locations, " claim an interest in the controversy adverse to the plaintiff, and are necessary parties to a complete determination or settlement of the question involved therein." (Prac. Act, Sec. 13.) That the Court cannot determine this controversy between the parties claiming undivided interests alone, without prejudice to the rights of those claiming under deeds of special locations, nor by saving their rights. (Prac. Act, Sec. 17.) That complete determination of the controversy cannot be had without the presence of the persons claiming under the deeds of special locations. (Barbour on Parties, 326 ; Prac. Act, Sec. 145 ; Story's Eq. Pl., Sec. 72 ; Mitford's Ch. Pl., Title Demurrers,

73

Sub. 8, p. 190; *Caldwell* v. *Taggart et al.*, 4 Pet. 202; *Mandeville et al.* v. *Riggs*, 2 Pet. 487.)

But it may be urged that this is a special proceeding in partition under the Practice Act, and that the general rule does not apply, and that those only can be parties who are mentioned in section two hundred and sixty-four. But section two hundred and sixty-four does not pretend to define who shall be parties; it only gives the circumstances under which the action shall be brought. Section two hundred and sixty-six provides that " no persons who have or claim any liens upon the property by mortgage, judgment, or otherwise, need be made parties to the action, unless such liens be matters of record." This section would be absurd if section two hundred and sixty-four was intended to define who were necessary parties. Section two hundred and sixty-eight is as follows: " The summons shall be directed to all the joint tenants and tenants in common, and all persons having any interest in, or any liens of record, by mortgage, judgment, or otherwise, upon the property, or upon any *particular portion* thereof, and generally to all persons unknown who have or claim any interest in the property." Broader language could hardly be used. The law evidently contemplates settling all such titles as those in question. Section two hundred and seventy-one provides that " the rights of the several parties, plaintiffs as well as defendants, may be put in issue, tried, and determined by such action." And the concluding clause is: " Except that where there are several unknown persons having an interest in the property, their rights may be considered together in the action, and not as between themselves." All showing that every question concerning the land, and necessary to the complete determination of the whole controversy, though arising between a plaintiff and defendant, or between different plaintiffs, or between different defendants, may be put in issue and determined. The word " may" should be construed " shall." (*Cook* v. *Spear*, 2 Cal. 412; 2 Abb. Dig., p. 420, Sec. 333.)

By section two hundred and seventy-eight the "judgment shall be binding and conclusive : First—On all persons named as parties in the action, and their legal representatives, who have at the time any interest in the property divided, *or any part thereof.*" These parties claiming under the deeds of special locations are named as parties, and have an interest in a portion of the property; hence the judgment is conclusive upon them.

Section two hundred and seventy provides that "the defendants who have been personally served with the summons and a certified copy of the complaint, shall set forth in their answers fully and particularly the nature and extent of their interest in the property."

These provisions seem made for precisely such a case as this, and cover the whole ground. The Act does not purport to provide machinery in full, unless it be in case of the sale of the land, and resort must be had to the old chancery practice. (*Smith* v. *Rowe,* 4 Cal. 7.)

We submit, then, that the titles to these special locations must be adjudicated upon and settled in this action. (*Coxe* v. *Smith,* 4 Johns. Ch. 275; 1 Story's Eq. Jur., Sec. 656, *b, c,* Sec. 657; *De Uprey* v. *De Uprey,* 27 Cal. 335.)

Have these titles been adjudicated upon in this case? The persons claiming these titles are named as parties to the action, and have an interest in the property; therefore, the judgment is conclusive upon them. (Pr. Act, Sec. 278.)

It follows that the judgment is, in effect, an adjudication upon these titles, whether they have been put in issue or not.

As to the rights of appellants in the land. Appellants contend that these deeds by metes and bounds are not void.

For the purposes of this argument, we may divide deeds by metes and bounds, of part of the common lands, by co-tenants less than all, into two classes: First—Where a co-tenant, without the consent of his co-tenant, attempts to convey his undivided interest in a part of the common lands, by metes and bounds. Second—Where co-tenants, owners of a large tract of common land, mutually agree that

each may convey the whole of parts and parcels of the common land, by metes and bounds, such part or parcel to come from the grantor's share, and where each co-tenant, under that understanding, executes such deeds by metes and bounds to strangers, and receives payment in full for the whole land described in the deed.

It will be found that nearly all the cases on such deeds in the reports are of deeds of the first class. Under deeds of the first class questions have arisen in actions at law between the grantee in the deed by metes and bounds and the co-tenant not signing, and the deeds have been held void—*i. e.*, that the deed could not affect the co-tenant not signing. (*Bartlett* v. *Harlow*, 12 Mass. 347; *Baldwin* v. *Whiting*, 13 Mass. 57; *Blossom* v. *Brightman*, 21 Pick. 283; *Peabody* v. *Minot*, 24 Pick. 329; *Starr* v. *Leavitt*, 2 Conn. 243; *Griswold* v. *Johnson*, 5 Conn. 363; *Duncan* v. *Sylvester*, 11 Shepley, 24 Maine, 482; *Jewitt's Lessee* v. *Stockton*, 3 Yerg. 492.)

The ground upon which these cases were decided was that such deeds, if held valid, would prejudice the co-tenant not signing, by compelling him to make separate partition of each distinct parcel; then under circumstances where this objection did not exist, as, for instance, where a co-tenant made such a deed, and the other co-tenant afterwards conveyed his interest in the same tract, the deed would be held good. (*Reed* v. *Spicer*, 27 Cal. 64.)

Under deeds of this first class, questions have arisen in actions at law between the grantee in the deed by metes and bounds and the grantor and others, and the deeds have invariably been held good against every one, except the co-tenant not signing. (*Varnum* v. *Abbott*, 12 Mass. 474; *Nichols* v. *Smith*, 22 Pick. 319; *Stark* v. *Barrett*, 15 Cal. 361.)

The deeds by metes and bounds in this case are all of the second class; and to do full and exact justice and equity to each and every one of the parties to this action, special locations, as conveyed to the several appellants, should be adjudged or set off to the parties claiming them under the deeds by metes and bounds, and the amount of each special

location should be deducted from the shares of the grantors of such special location. If there is any injustice in this course, to whom is it done? It certainly cannot be unjust to the grantors in the deed. They cannot dispute their deed, nor their declaration in it that they owned the land described in it in fee simple.

Again, these original grantors undertook to locate their lands by these deeds—there is no injustice to the grantors in the deeds to consider so much land set off by the deed to their shares—but so much as they locate is taken from their shares, and consequently their shares are so much the less, and by so much, the less able to interfere with other locations which said grantors did not make.

If, then, these special locations are not to be held or made good, it must be upon the ground of the existence of some positive law which prohibits it.

*Is there any such law?* We submit that there is none. We contend, on the contrary, that well recognized reasons and established principles require a judgment in favor of these deeds.

It cannot be urged against this proposition that the whole rancho was not partitioned; that objection would be fully answered by the case of *Long et al.* v. *Dollarhide*, 24 Cal. 218. We have the agreement of partition—an agreement acted upon by all the parties. Had this agreement been in writing, it would have bound the co-tenants, and we could have compelled them to give deeds if necessary, and a Court of equity would consider such deeds as already made.

The only objection, then, to treating this as a valid partitition is the Statute of Frauds. To this objection we have two answers: first—the facts in this case take it out of the Statute of Frauds; and second—there was a valid partition by deed.

A man is estopped by his deed to deny that he granted, or that he had good title to the estate. ( *Wilkinson* v. *Scott*, 17 Mass., marg. p. 257; *Eveleth* v. *Crouch and Wife*, 15 Mass., marg. p. 309.) So also as to parties and privies.

A co-tenant owns in the whole land, but it is not strictly an absolute ownership; any one of the co-tenants has the absolute right to have the land partitioned, and thus to confine another co-tenant to a piece by metes and bounds, and to deprive him of all interest or title in the rest of the land. When one of the co-tenants made a deed, he could not deny that he had segregated so much of the common land to his share.    (*Corbett* v. *Norcross*, 35 N. H. 99.)

The Court, from the facts in the case, should have presumed a release, from the co-tenants not executing any particular deed by metes and bounds. (*Slice* v. *Derrick*, 2 Richardson, S. C., 630; *Gray* v. *Bates*, 3 Strobh. 500; *Barclay et al.* v. *Howell's Lessee*, 6 Pet., U. S., marg. p. 513.)

Finàlly, appellants contend that if none of the foregoing points are held good, they are entitled to stand in the place of their grantors, as representing their undivided interests, and from their equities in the case are entitled to have these lands set off to them.    It will be found that Courts of equity have invariably protected such rights.    The principle laid down in 1 Story's Eq. Jur., Sec. 656, *c*, fully covers this case in every respect, and we might rest upon this authority alone. (See, also, 1 Story's Eq. Jur., Sec. 656, *b*; *Green* v. '*Putnam*, 21 Barb. 507–509; *Robinson* v. *McDonald*, 11 Texas, 385; *Hart's Heirs* v. *Hawkin's Devisees*, 3 Bibb, 508; *Webber* v. *Mallett*, 16 Maine, 4 Shepley, 91; *St. Felix* v. *Rankin et al.*, Edward's Ch. 323; *Teal* v. *Woodworth*, 3 Paige's Ch. 474.)

*Temple & Thomas*, for Respondent.

The object and purpose of an action for a partition of lands, under our statute, is to ascertain and establish, and partition, the different interests of the joint tenants in common therein; and it is only tenants in common, or joint tenants, and those having liens upon or interests in undivided interests, who are necessary or proper parties to the action.  .

The appellants are not proper parties to this action; they have no interest in common and undivided with the respond-

ent in the land sought to be partitioned; and no decree can be rendered affecting their rights, if they have any. (31 Maine, 485; Pr. Act, Secs. 264, 265.)

The appellants' counsel calls the attention of the Court to the provisions of sections two hundred and sixty-six, two hundred and sixty-eight, two hundred and seventy-one, and two hundred and seventy-eight, for the purpose of showing that the interests of persons claiming "special locations" should be determined and settled in this action. The position is untenable. The law is providing for the partition of the interests of tenants in common, or joint tenants, and the interests or rights spoken of in the sections referred to by counsel are the interests and rights which are mentioned in and made the subject of litigation by sections two hundred and sixty-four and two hundred and sixty-five. And when the expressions " or upon any particular portions," and " or any part thereof," are used, it is meant the *undivided portion or part* of the estate. The counsel then appeals to the general principles which govern Courts of equity in deciding upon and settling the rights of the persons interested in the subject of the suit. These principles we do not question. The question is: What interests are properly the subject of this suit? We say, the interests of the tenants in common are the subject of this suit, for no other interests can be partitioned. Such, too, is the tenor of all the authorities in equity upon the subject of parties to actions of partition. (*Harwood* v. *Kerby*, 1 Paige Ch. 469; *Sabring* v. *Mersereau*, 9 Cow. 344; *Van Courtlandt* v. *Beekman*, 6 Paige Ch. 492.)

The statutes of Maine, Massachusetts, and New York, on the subject of partition, are very similar to our own upon that subject; and the Courts of those States sustain the position we here take. (*Soutter* v. *Porter*, 27 Maine; *Tilton* v. *Palmer*, 31 Maine, 486; *Jackson* v. *Myers*, 14 Johns. 354; *Coles* v. *Coles*, 15 Johns. 319; *Bradshaw* v. *Callaghan*, 8 Johns. 558; 9 Cowen, 530; *Blossom* v. *Brightman*, 21 Pick. 383, 385; *Van Courtlandt* v. *Beekman*, 6 Paige's Ch. 492; *Cook* v. *Allen*, 2 Mass. 462; *Broughton* v. *Howe*, 6 Vt. 266; 21 Pick. 283.)

The Court will observe, upon an examination of these cases, that in most of them the parties plaintiffs were persons claiming to be interested in the land, by virtue of deeds from one tenant in common for a portion of the land by metes and bounds. And the Courts held that the action could not be maintained, for the reason that the plaintiffs failed to show any title as tenants in common to an undivided share in the premises.

The titles to the special locations held by appellants have not been litigated and adjudicated upon in this action, for the reason that the complaint tendered no issue to the defendants owning them. The plaintiff alleges that the defendants who are now appellants, and others, were tenants in common with him in the land described in the complaint. This allegation was denied by every one of the appellants; and the Court found that the appellants were not tenants in common with the plaintiff, which, of course, entitled the appellants to a decree dismissing the plaintiff's complaint as to them. (15 Wend. 340, 610.) All the Court could do, then, was to decree a partition between the persons found to be tenants in common with the plaintiff, and dismiss the complaint as to the appellants. That being done, no injury could result to the appellants from such a decree. (31 Maine, 486.)

It is well settled that a suit for partition does not decide title or create a new title. It barely dissolves the tenancy in common, and leaves the title as it was, except to locate such right as the parties may have respectively in distinct parts of the premises, and to extinguish it in others. (*Tabor* v. *Wiseman*, 2 Ohio, N. S., 211; *Tilton* v. *Palmer*, 31 Maine, 486.) As to appellants' deeds, we only say that they are wholly invalid as to the other tenants in common not signing them, and that they do not create an estate in the lands attempted to be conveyed. (*Brown* v. *Bailey*, 1 Met. 254; *Porter* v. *Hill*, 9 Mass. 34; *Smith* v. *Benson*, 9 Vt. 138; *Blossom* v. *Brightman*, 21 Pick. 283, 285; *Jeffers* v. *Radcliff*, 9 N. H. 242; *Bartlett* v. *Harlow*, 12 Mass. 347; *Mitchell* v. *Hazen*,

4 Conn. 511; *Grenwood* v. *Johnson*, 5 Conn. 363; *Tilton* v. *Palmer*, 31 Maine, 486; *Soutter* v. *Porter*, 27 Maine; 9 Cowen, 530; *Bradshaw* v. *Callaghan*, 8 Johns. 558; *Sabring* v. *Mersereau*, 9 Cowen, 344; *Jackson* v. *Myers*, 14 Johns. 354; *Coles* v. *Coles*, 15 Johns. 354.)

We do not agree with the counsel in his classification of deeds by metes and bounds. It is true there are two kinds of deeds by metes and bounds—one is, where one tenant in common conveys or attempts to convey his undivided interest in a particular part of the land by metes and bounds; the other is, where the tenant in common attempts to convey the whole interest in a particular part of the land by metes and bounds. The Courts, however, have never made any distinction between the two kinds of deeds, but have in every case held that neither vested title in the grantee to the land attempted to be conveyed.

The understanding among the Bojorques family does not affect the rights or interests of subsequent purchasers in good faith and without notice. Nor will the recording of the deeds for special locations operate as notice of that understanding. The recording of the deeds gives notice only of their contents. The purchaser of portions of the land does not hold adversely to the tenants in common, and, having taken and held possession of the portion described by metes and bounds, will not disturb the rights of the tenants in common, or prevent them having partition of the lands thus held.

*A. T. Wilson*, and *George Pierce*, also, for certain of the Defendants who did not appeal.

74

By the Court, RHODES, J.:

Action for partition of the Rancho "Laguna de San Antonio." Bartolome Bojorques, the owner of the rancho, conveyed to his eight children, jointly, the undivided eight ninths of the rancho, and subsequently conveyances of specific portions of the land were executed to divers persons, none of which were executed by all the tenants in common, but all were executed by two or more of them. The tracts thus conveyed are denominated by the parties " special locations," and the grantors " original grantors." Those holding special locations, as well as those holding undivided interests in the rancho, were made defendants to the proceedings. The Court ordered a partition of the rancho, and on the coming in of the report of the referees rendered judgment of partition, without ascertaining and determining the rights and interests of the holders of the special locations—the action not having been dismissed as against them—or ordering any portions of the lands to be set off to them. This constitutes the principal ground of complaint on this appeal.

The first question is, whether the holders of the special locations are proper parties to the action. The language of the statute is sufficiently clear and explicit to afford a solution of the question. The judgment was rendered before the amendment of 1866 to the Practice Act was passed. Section two hundred and sixty-four provides that " where several persons hold and are in possession of real property, as joint tenants, or as tenants in common, in which one or more of them have an estate of inheritance, or for life or lives, or for years, an action may be brought by one or more of such persons for a partition thereof, according to the respective rights of the persons interested therein," etc. The respondents contend that this provision includes only those who are joint tenants or tenants in common of the whole tract of which partition is sought. That is the correct construction, if the section is to be considered alone, and without regard to other sections of the Act which have a material

bearing on the point, and which we will hereafter notice. It is provided in section two hundred and sixty-eight that " the summons shall be directed to all joint tenants and tenants in common, and all persons having any interest in, or any liens of record by mortgage, judgment, or otherwise upon the property, or any particular part thereof; and, generally, to all persons unknown who have or claim any interest in the property." The first class described in the section includes joint tenants and tenants in common of the lands of which partition is sought. The next class comprises those having any interest in the whole property or any particular portion thereof. The third class is the lienholders upon the whole or any part of the premises. A statute must be so construed as to give effect, if possible, to every portion of it, and without rejecting any part as surplusage, or treating it as a repetition of a provision already made. Provision was made in the first clause for joint tenants and tenants in common of the general tract, and to hold that those mentioned as having an interest in the property must be restricted to such as are joint tenants or tenants in common of the whole, would make the provision a useless repetition. And besides this, if it is held that the words " persons having an interest " comprise only joint tenants and tenants in common, they cannot be limited to those who hold such interests co-extensive with the whole property, for the section includes those also who have such interests in any particular portion of the property.

The appellants' counsel takes the position that a conveyance by one tenant in common, or any number of them less than the whole, of a specific portion of the common lands is not void. This is not controverted by the other side, but they insist that it is so far void as against the other tenants in common that they may disregard it on partition. The rule upon this point is, that one tenant in common cannot convey any specific part of the land so as to prejudice his co-tenant. (*Porter* v. *Hill*, 9 Mass. 34; *Bartlet* v. *Harlow*, 12 Mass. 348; *Baldwin* v. *Whiting*, 13 Mass. 57; *Rising* v.

*Stannard*, 17 Mass. 282; *Peabody* v. *Minot*, 24 Pick. 329; *Nichols* v. *Smith*, 22 Pick. 316; *Griswold* v. *Johnson*, 5 Conn. 363; *Duncan* v. *Sylvester*, 24 Maine, 482; *Varnum* v. *Abbot*, 12 Mass. 474; *Robinett* v. *Preston*, 2 Rob., Va., 278.) Such is also the doctrine of this Court. In *Stark* v. *Barrett*, 15 Cal. 368, the precise question was presented. The defendants in that case, not claiming as joint tenants or tenants in common, resisted the recovery on the ground that the deed under which the plaintiff claimed title, having been executed by only one of the tenants in common, was void. The Court, in disposing of the point, said: "Neither a joint tenant nor a tenant in common can do any act to the prejudice of his co-tenants in their estates. This is the settled law, and hence a conveyance by one tenant of a parcel of a general tract owned by several is inoperative to impair any of the rights of his co-tenants. The conveyance must be subject to the ultimate determination of their rights, and upon obvious grounds. One tenant cannot appropriate to himself any particular portion of the general tract; as, upon a partition, which may be claimed by the co-tenants at any time, the parcel may be entirely set apart in severalty to a co-tenant. He cannot defeat this possible result whilst retaining his interest, nor can he defeat it by the transfer of his interest. He cannot, of course, invest his grantee with rights greater than he possesses. The grantee must take, therefore, subject to the contingency of the loss of the premises, if on the partition of the general tract they should not be allotted to the grantor. Subject to this contingency the conveyance is valid and passes the interest of the grantor." The rights thus assigned to the grantee are precisely those pertaining to the grantor in the special tract—no greater, and no less. The grantor, before his conveyance of the special tract, held his undivided interest therein subject to the contingency of the loss of it, if on the partition of the general tract the special tract should be allotted to one of his co-tenants. The grantee, then, acquires all the interest of his grantor in the special tract, and that interest is a tenancy in the special

tract in common with the co-tenants of his grantor, but his conveyance did not sever the special tract from the general tract, so far as the co-tenants are concerned, and the general tract is therefore liable to a partition so far as the co-tenants of the grantor are concerned, as it would be had the conveyance of the special tract not been made. It appears, therefore, that aside from the directions of the statute in that respect, the interest of the grantee of the special location shows that he is a proper party defendant in the action.

It is not difficult to show that in some cases the holder of the special location is a necessary party. If he is regarded as an unnecessary and improper party while he holds a conveyance from only one of the co-tenants, he will not be rendered competent to participate as a party to the action by receiving further conveyances from the remaining co-tenants, nor can his position be strengthened in consequence of his grantor's subsequent conveyances to the other tenants in common or to strangers, by specific locations or otherwise, sufficient to cover all the general tract remaining after his conveyance of the first special location. Where an original grantor has covered the general tract with his special locations, as he has parted with interest in the whole tract he is not a proper party to the partition. Must his original share be unrepresented in the action? Suppose A. and B. are tenants in common of the general tract, and that A. conveys the east half to C., and the west half to D. It is desirable to B. to have a partition. Whom will he make defendants? Evidently not A., for he has no interest in the premises, his two conveyances having as completely severed his connection with the general tract as would one conveyance of the whole tract to D. alone. C. and D. are necessary parties, for there is none other whom B. can sue as holding an interest of any kind in the tract. If, after A.'s several conveyances, C. conveys his interest to D., it cannot be doubted that D. is a necessary party, for if the two halves of a thing are equal to the whole, D. holds the full and precise interest held by A. while a tenant in common with B. All of those convey-

ances were of special locations, and if they are to be disregarded in the proceedings for partition, this strange and illogical result would ensue, that the claims of one who was unquestionably a tenant in common of the general tract would be disregarded, while another, who held no interest in the premises, would be required to litigate the action with the plaintiff, and be entitled to a judgment confirming to him lands which he had previously conveyed. This will be more apparent, if possible, if, after A.'s conveyances of the east half to C. and the west half to D., B. should convey the east half to D. and the west half to C. Do both A. and B. remain competent to conduct the proceedings for the partition, after they have parted with all their interest in the whole tract to C. and D. ?

Suppose, again, that A. conveys to C. and D., respectively, specific parcels, by metes and bounds, and then conveys his undivided interest in the whole rancho to B., and that on a survey it is found that the two specific parcels comprise the whole rancho. The deeds of A. to C. and D. vested in them all the interest in the rancho, and as he could claim nothing in the rancho, B., as his vendee, was in no better position in respect to A.'s half than A. would be had he not conveyed to B., and would remain the owner of only the undivided half of the rancho. Whom will B. sue as the defendant to his action for partition? Certainly not A., for A. conveyed his undivided interest in the whole rancho to B.; and if C. and D. are not proper parties, because of their holding only special locations, B. cannot commence the action, for there is no one whom he can make a defendant.

Sufficient attention has not usually been given to the position occupied by the tenant in common after a conveyance of a specific parcel of the general tract. He is often mentioned as a tenant in common of the general tract, but this is not true in any sense nor for any purpose. The remaining tenants in common, in applying for a partition, are entitled to the same relief in every respect that they could demand were the special locations remaining in the hands of the

tenant in common who conveyed them ; and the same would be the case if, instead of special locations, the tenant in common had conveyed portions of his undivided interest.   But not in the one case more than the other are the remaining tenants in common authorized to disregard the conveyances and insist upon the allotment in partition being made to the grantor; and most certainly the grantor cannot be heard to make this claim against his grantees of the special locations. To illustrate the true position of all the parties in respect to each other, take the plaintiff's case.   In 1852, Angela Howe— who then owned the undivided ninth of the rancho—united with others in a conveyance of a tract of three hundred and twenty acres to J. Denman and E. Denman.   It is claimed that, after that conveyance, she still remained a tenant in common of the whole rancho.   Had she conveyed to the Denmans all the rancho except the specific tract of three hundred and twenty acres, what would have been their relative positions in respect to the undivided ninth which, before the conveyance, she held ?   If, in the case of the conveyance as it was actually made, she would be considered the tenant in common of the whole rancho, in the case supposed the Denmans would occupy that position.    But, in truth, it makes no difference, in the respect in question, what may be the relative dimensions of the special location and the rancho, for upon her execution of the conveyance of the special location, be it large or small, relative to the whole rancho, her rights for every purpose whatsoever became restricted to that portion of the rancho not included in her conveyances.    She thus became, by the execution of her conveyance to the Denmans, simply the holder of an undivided interest in a portion of the rancho, holding the same rights therein that the Denmans took in the portion conveyed to them.   The other tenants in common, in procuring a partition, had the right to treat the interest originally held by her as still united, if it became necessary to do so, in order that a proper and equitable allotment of the lands might be made, and she thus became liable to lose, on the partition,

all the lands reserved from her conveyance, as fully as the Denmans to lose theirs, and by the same means; except that the chances in her favor and against the Denmans would increase in the exact proportion that the value of her reservation exceeded that of her grant. Had the two been equal, the liability of each party to lose would have been equal. Each are alike the holders of special locations, and neither she nor the subsequent vendee of her undivided interest in the whole rancho—who, like her, was restricted to the portion of the rancho not sold by her—had the right to participate in and control the partition, to the exclusion of the Denmans. Angela Howe executed eighteen conveyances, and, without pausing to compute the amount, assume that they amounted to thirteen thousand out of the twenty-five thousand acres in the rancho, of about the average value—upon what principle of law, equity, or common sense can she claim the right to be heard in and control the proceedings in partition, to the exclusion of her grantees? We can see no way to avoid the conclusion that if she or her subsequent vendee is a necessary or proper party, her prior vendees also are.

The view that the holders of the special locations are necessary parties is materially strengthened by considering sections two hundred and seventy-eight and two hundred and ninety-three of the Practice Act, in connection with section two hundred and sixty-eight, above cited. It is provided by section two hundred and seventy-eight that the judgment confirming the report of partition shall be binding and conclusive: "First—On all persons named as parties to the action, and their legal representatives, who have at the time any interest in the property divided, *or any part thereof*, as owners in fee, or as tenants for life or for years, or as entitled to the reversion, remainder, or the inheritance of such property, or any part thereof, after the termination of a particular estate therein," etc. The words "any part thereof" necessarily mean, in the connection in which they are used, any part of the property, and not any portion of an undivided

interest in the property. It would be very inconsistent, if not absurd, that the judgment should be conclusive on those who were not proper parties to the action. The same observations would apply to section two hundred and ninety-three, which provides for the ascertainment of the value of a vested or contingent future right or estate in any of the property sold. The whole scope and tenor of the provisions of the Act relating to partition show that the intention was to make the one judgment of partition final and conclusive on all persons interested in the property, or any part of it, of whom the Court could acquire jurisdiction, and not to permit the matter to be taken up in piecemeal; and, accordingly, provision is made for bringing in not only joint tenants and tenants in common in the whole or any part of the property, but those having future rights or estates, those entitled in remainder or reversion, those having estates for life or for years, and those holding liens by mortgage, judgment, or otherwise; and power is given to the Court to try and determine the rights of all the parties to the action, and to order compensation to be made by one tenant to another, so as to equalize the shares allotted to each. To an action of that character the holder of the special location is a necessary party. The action, though regulated to a great extent by the statute, partakes more fully, both in respect to the remedies provided and the mode of procedure, of the principles and rules of equity than those of law.

Some of the authorities cited by the counsel for the respondent would militate strongly against the conclusion to which we have arrived, were it not for the fact that those cases turn mainly on the terms of the statute under which the proceedings were instituted. Thus in *Harwood* v. *Kerby*, 1 Paige, 469, it was held that an incumbrancer was not a proper party, because he was not included in the words of the statute. In *Bradshaw* v. *Callaghan*, 8 Johns. 563, it was decided that the widow in respect to her claim of dower, was not a proper party, on the ground that "she is not

75

included in the description of joint tenant, tenant in common, or coparcener, to which class only the statute extends;" but in *Coles* v. *Coles*, 15 Johns. 319, it was said that the widow was not a proper party where a partition was sought, but that the statute had been amended since the decision in *Bradshaw* v. *Callaghan*, by which she was made a proper party to the proceedings where the object was to sell the premises under the Partition Act. In *Cook* v. *Allen*, 2 Mass. 464, the demandant claimed through certain proceedings in partition, in which judgment was taken by default, after notice by publication, according to the statute, and the tenant relied on a disseizin by his grantor of all the tenants in common; and the Court held that the judgment was conclusive against the defendant's grantors because he claimed an interest in the land—which was title in severalty—and was notified to appear and defend his interest, which he might have done, and have been admitted as a party to the record.

Without proceeding further with a review of the cases cited, it is sufficient to say that those which touch this point are made to depend upon the peculiar provisions of the statute under which the proceedings were had. An exception to this is found in *Porter* v. *Hill*, 9 Mass. 34, in which it is held that one joint tenant cannot convey a portion of the premises to a stranger, and the reason given is, "that if he could, his grantee would become a tenant in common of a particular part with the other joint tenant, who in making a legal partition might, notwithstanding, have the whole of the part thus conveyed assigned as his property." This doctrine cannot be sustained. The reason given is the very contingency, subject to which, as it is said in *Stark* v. *Barrett*, the grantee takes his conveyance of the specified parcel. In *Bartlett* v. *Harlow*, 12 Mass. 347, the Court, in citing the decision in *Porter* v. *Hill*, that one joint tenant cannot convey any specific part of the land to a stranger, adds, "at least not so as to prejudice his co-tenant." The doctrine that one tenant in common may convey a specific part of the general tract, subject to the contingency mentioned, is

affirmed in *Varnum* v. *Abbot*, 12 Mass. 474, and many other cases in that State.

Counsel place much reliance upon *Stark* v. *Barrett*, 15 Cal. 368, as decisive of the correctness of their position. Mr. Chief Justice Field, in delivering the opinion of the Court in that case, said: "The grantee (of the special location) must take, therefore, subject to the contingency of the loss of the premises, if, upon the partition of the general tract, they should not be allotted to the grantor." A portion of the paragraph in which this language occurs has been already cited. The question as to who were proper parties to an action for partition was not involved even in the most indirect manner, nor was it discussed by counsel or determined by the Court. In passing on the question whether the purchaser of a specific parcel from one of the tenants in common could maintain ejectment against a stranger to the title, the Court held that his title was good against all the world except the other tenants in common, and as to them it was subject to the contingency of being taken by them, if it should be found necessary to do so in order to make a proper partition of the general tract. It was not the purpose of the Court to determine who were proper parties to the partition of the general tract, nor to whom the allotment should be made, but simply to say that the grantee of the special tract stood, as to the contingency of its loss, precisely in the stead of the grantor.

The doctrine of Courts of equity, on this point, is stated in 1 Story Eq. Jur., Sec. 656, *c*, as follows: "And Courts of equity, in making these adjustments, will not confine themselves to the mere legal rights of the original tenants in common, but will have regard to the legal and equitable rights of all other parties interested in the estate, which have been derived from any of the original tenants in common; and will, if necessary for this purpose, direct a distinct partition of each of the several portions of the estate in which the derivative alienees have a distinct interest, in order to protect that interest. Thus, where A., B., and C. were ten-

ants in common in undivided third parts of an estate comprising Whiteacre and Blackacre, and C. had conveyed his interest in Blackacre to D., and his interest in Whiteacre to E.; upon a bill filed by A. and B. for partition of the whole estate, the Court directed that Blackacre should be divided into three parts, and one part should be conveyed to A. and B. and D. respectively, and that Whiteacre should be divided into three parts, and one part should be conveyed to A. and B. and E. respectively. In this way, consistently with the rights of A. and B., the interests of D. and E. were, as in equity they ought to be, fully protected and secured." We have already remarked that the main features of the action, as prescribed by the statute, closely resemble those of a suit in equity brought for the same purpose.

It would seem that the respondents, in order to maintain the action, must adopt the view that the holders of the special locations are necessary parties, if it is true—and in our opinion its truth does not admit of a doubt—that the grantor, upon the execution of his conveyance of the special location, parts with all interest therein; and we think they must also support a quite liberal construction of section two hundred and sixty-four. The action must be brought in the name of the real party in interest, according to section four, and none of the provisions relating to partition change that rule. After Bartolome Bojorques and his children became each the holder of the undivided ninth of the rancho, they made twenty-two deeds of distinct parcels, each executing one or more deed, but none of the deeds were executed by all the tenants in common, though each deed was executed by two or more of them. All of those deeds were made before any of the "original grantors" conveyed undivided interests in the whole rancho. They, in conveying undivided interests, could not pass any other or greater interest in the rancho, or any part thereof, than they then held. Each tenant in common held nothing in the special location as against his or her vendee of the special location, and, consequently, at the time when the action was brought, there was no one of all the

claimants in the rancho who held an interest as tenant in common in the whole rancho. If none but those interested in the whole rancho are proper parties to the action, neither the plaintiff nor any one of the defendants were entitled to institute proceedings for partition, and the result would be a rancho in which more than one hundred persons are interested, which was legally indivisible.

There is no such thing under our system of pleading and practice as a suit in equity for partition distinct from the proceeding provided for in the Act. The rules there laid down are applicable alike to all actions for partition, and we see nothing in those rules, if section two hundred and sixty-four should be liberally construed, so as to advance the remedy—as we think it must, in order to meet a case like the present—which will preclude the parties here from having a complete partition of the rancho among all the persons interested therein. Nor is there anything in the nature or extent of the interest of the several persons interested, that will prevent a partition. There may be many intricate and difficult questions to be settled between the holders of the special locations and those claiming undivided interests in the whole rancho, but they will have to be determined before the partition is complete. If partition is made in this action among the claimants of individual interests in the general tract, reserving the right of those holding specific portions, partition must afterwards be made between each claimant and the holders of the specific portions falling within his allotment, which were conveyed by his grantor. And in making such first partition the Court would—as was done in this case, and as the principles of equity and the dictates of common honesty would require—make the partition in such manner that the special locations should, as far as practicable, fall within the share of their several grantors. A complete partition should be made in one action, if practicable, and the parties desire it. It was very properly said by Mr. Chief Justice SANDERSON, in *De Uprey* v. *De Uprey*, 27 Cal. 335: " Any question affecting the right of the plain-

tiff to a partition, or the rights of each and all the parties in the land, may be put in issue, tried and determined in such actions;" and we may add that, when put in issue, they should be tried and determined, instead of being sent back to be tried in very many new actions. (*Morenhout* v. *Higuera,* .32 Cal. 289.)

Our conclusion upon this point is, that the grantee of a special location occupies, as to it, the identical position that his grantor held immediately before he executed the conveyance, and that the holder of the special location is a necessary party to the action for the partition of the general tract.

The point presented by the appellants that, by reason of the understanding and verbal agreement among the grantees, the grantees took title in severalty to their respective special locations, is not sustainable on the record before us. It presents no finding of that fact, nor evidence from which it should have been found. There would be great difficulty, under the Statute of Frauds, in sustaining a partition attempted to be made in that manner.

The error, as alleged by the appellants, and not controverted by the other side, in respect to R. B. Turner and W. B. Comstock, by which a certain interest was allotted to Comstock alone, instead of to him and Turner jointly, will be corrected on the new trial.

It is unnecessary to consider at any length the point made by Anita Bojorques—that on the death of her mother she became entitled to the undivided half of the interest conveyed to Pedro, her father, or so much thereof as he then held—for if on the new trial it shall appear that the conveyance of Bartolome to his children was made for a valuable consideration, as stated by the referee in his third finding, the property became common property, and, on the death of the wife of Pedro, the one half then remaining unsold descended to her daughter Anita. Should it appear, however, that the deed was executed as a gift to the grantees, the rule is the reverse, the property becoming the separate property of Pedro. (See *Hihn* v. *Peck,* 30 Cal. 280.)

The parties will be entitled to avail themselves of the evidence in the cause remaining in the Court below, as well as such further evidence as they may produce; and the Court may permit the referees to use the surveys, maps, etc., made by the former referees, so far as the same may be applicable or available under the case made on the new trial.

The whole argument of the counsel for the appellants is inconsistent with the idea that the plaintiff is barred by the Statute of Limitations, and as this very voluminous and complicated case ought not to be incumbered with unnecessary issues, it may not be improper to suggest that the defendants who have pleaded the Statute of Limitations should strike out the portion of the answer setting it up, unless they still rely on it; and it may be added that, as but little if any question was made, so far as the record before us shows, as to the findings of the referee being supported by the evidence, the parties might readily narrow the issues by agreeing to a large portion of the facts in the case.

Judgment reversed and cause remanded for a new trial—the costs of the appeal to abide the event.

[The foregoing opinion was delivered at the July Term, 1867, in which neither Mr. Justice SHAFTER nor Mr. Justice SAWYER expressed an opinion.—REP.]

*F. D. Colton*, for Appellants, on rehearing, argued that the findings of fact contained in the record were sufficient predicate upon which this Court might render a final judgment in the cause, at least as to appellants.

*A. T. Wilson*, *A. Thomas*, and *George Pierce*, for Respondents, *per contra*.

By the Court, RHODES, J., on rehearing:

We are unable to render judgment without disregarding or rejecting some of the findings. The referee found that the whole rancho was owned by certain of the parties, and

specified the undivided interest in the entire tract held by each—certain of the interests being subject to certain conveyances, which amounted in the aggregate to about two thousand acres.

Those findings remaining, the holders of the special locations, who claim about one half of the rancho, would be cut off, except so far as they might be included within the conveyances last mentioned. But, according to the principles announced in the former opinion in this case, those findings cannot stand. Each of the "original grantors" executed several of the conveyances of the special locations. Upon the execution of any one of these conveyances, the grantors ceased to have any interest in the special location conveyed; nor did the subsequent grantee, to whom was conveyed what purported to be an undivided interest in the whole rancho, acquire any interest in such special location.

In respect to the special locations, it was found that "it was the custom and practice with the Bojorques family for different individuals to sell parts and parcels of said rancho by metes and bounds, and it was the understanding among them that such part and parcel should come out of the grantor's share." This is directly opposed to the theory that the holders of the special locations are tenants in severalty. The referee has not found what interest in the special locations each of the claimants thereof hold; but has found that certain of the original grantors joined in the execution of the several conveyances mentioned, and that the grantees, in certain instances, executed conveyances of portions of all their respective special locations. These, of course, are not the ultimate facts of title in the special locations, but are mere probative facts. No judgment could rightfully be rendered until those ultimate facts were found; and it has often been repeated that it is not the province of this Court to find the facts in cases pending an appeal. If the special locations are taken up in detail, it becomes more apparent that this duty is more appropriate to a referee, who can examine each of the conveyances, and, after ascertaining the title

passing thereby, can find the extent of the interest of each holder in the special locations.

It is not difficult to appreciate the anxiety that many of the parties manifest for a speedy final decision of this case. The questions are complicated almost beyond precedent. It may safely be said that the books furnish no instance of a case involving the title to a large tract of land—some twenty-five thousand acres in this case—in which no one holds title in severalty to any part, and no one is a tenant in common of the whole. When such confusion and complexity are mainly the result of the conveyances the parties have executed or accepted, they cannot complain that much time and labor are required for the solution of the numerous questions involved. Much labor and expense may be saved by using, as the parties are entitled to do, the documentary evidence on file in the case, including the referees' report of the testimony, and the deeds, exhibits, etc., subject to objection as when first offered, and the surveys, field notes, maps, etc., of the referees on partition.

Judgment reversed, and the cause remanded for a new trial. The costs of the appeal to be awarded upon the final disposition of the action.

SAWYER, C. J., dissenting:

I dissent.

The last foregoing opinions were delivered at the July Term, 1868.